Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now open. The Honorable Robert D. McCleary presiding. Please be seated. Your Honor, the first case on the docket this morning is 2-22-0084. Four people of the State of Illinois plaintiff's appellee, the Manasol Arredondo defendant's appellant. Arguing for the appellant, Ms. Mavs Danik. Arguing for the appellee, Ms. Lynn M. Haring. Thank you. Ms. Danik, you may proceed. Good morning, Your Honors. Good morning, Counsel. Hold that down just a tad. There we go. I guess I'm not as tall as I thought I was. Whoever was there before. Good morning, and may it please the Court. My name is Amaris Danik with the Office of the State Appellate Defender, and I represent my client, Appellant Manasol Arredondo. Just as an initial matter, Your Honors, in regard to the second issue on appeal today, the State has conceded error in that issue, and so the issue that I will address today is the first issue pertaining to the aggravated fleeing and eluding charge. I have a question. Watching the video, do we watch the video de novo? Is it like documentary evidence, or do we apply the Collins Standard and review it like any other piece of evidence? Your Honor, our position is that you would review that de novo because you would be in the same position to, you know, kind of assess that evidence that the trial court would have done when it initially viewed that piece of evidence. The Fourth District believes that our review is the same as any other piece of evidence. There are some cases out of the First District that suggest that you're correct, that it's de novo review. But the trial court made findings, specific findings, after having reviewed the video real-time, live, and also, again, in chambers, and made a specific finding that based upon the evidence in his review of the video, there was an injury. Yes, he did, as it pertained to the injury. That also was based in part on the officer's testimony. The officer did testify, and the judge found that that testimony was credible in terms of the soreness to his arm and his testimony about the scratches. So would you agree now that with both a video as well as live testimony, we defer to the trial court and we don't review the video de novo? Judge, my position is still that you would refer to the trial court with regard to its assessment of the live witness testimony, but the review of the video is still de novo. What is the video supposed to establish insofar as error is concerned on the part of the trial court? I'm sorry. Can you repeat that, Justice? Well, does it show that the police officer wasn't in uniform? Does it show that the squad car was unmarked? Does it show that his arm wasn't inside the car? The point being that, yes, do we consider it de novo, but the point is that it may not cover testimony or it may not impeach testimony. And when I say may, I mean can, not may. It's not a question of authority. It's a question of physicality or metaphysicality. And so what does the video display, if anything, that would impeach or establish that the trial court's findings were against the manifest way to the evidence? Because if your answer is none, then I don't necessarily feel that the question that Justice Burkett was asking is necessarily material to the issue. But I still enjoy his question because it made me think about what it should be. And what I think it should be is it should be capable of establishing some fact sometime where, for instance, the video shows that a black man shot the gun. And the testimony of the officers was it was a white man. So that's where I think maybe it might be of some significance. But I'm not sure that in this case that it impeaches what the officers testified to, nor does it necessarily establish that the findings of fact were against the manifest way to the evidence. I agree with you, Your Honor. In this case, the video is unclear in terms of his arm being in the car. And that was, you know, kind of discussed in the findings that were made. And it was the testimony of the officer that covered that. So that was potentially, you know, I mean, there was it's not our position and it's not the legal argument that we're making that the video in any way impeached the officer's testimony. The Body Cam Act, the Police Body Cam Act, provides that the video is admissible, correct? It's a matter of law. The legislature has given us that directive that these body cam footage is admissible. The officer announced what he was about to do. And you can hear that on the tape where the officer says, as you see him leaning and another officer is blocking a portion of the view. But you can see the officer leaning in and you can hear him announce, I'm going to operate your window. And it's at that point that the defendant takes off, correct? That's my recollection of the video. Is that statement, that statement, I'm going to operate your video, that statement's in evidence, correct? There was no objection to it on grounds of hearsay because it's not hearsay. He's saying what he's about to do, present sense impression. There was no objection on the record. So there is clear evidence that his arm was in the window when you combine what you hear audibly plus the visual that his arm was in the window. In fact, in her statement to the probation officer for the pre-sentence report, the defendant admits that. Your Honor, we're not arguing that it was against the manifest way of the evidence for the judge who made that finding. His arm was clearly in the window, correct? According to the officer's testimony. I believe that the actual video, it showed his body blocked. But I don't disagree with what he said on the video. What he said is, that's in evidence. Correct. Why would he lie to her? Judge, that's not our position. I agree. All right. Thank you. Well, is the issue that maybe you're trying to suggest is, well, he said that the video is either a better or a worse, depending upon the circumstances, indication that that is accurate. And in this case, we don't really know because it was blocked. Correct. Is that what you're trying to tell us? Yes, yes. Okay. All right. I hear you correctly that said, when you said, I think I heard you say what you wanted to go on to the second point. The first issue, the fleeing and eluding. The second issue was conceded by the state with regard to the resisting arrest in the One Act, One Crime. And so I was going to leave that issue and I was going to address only the first issue with regard to the fleeing and eluding, the aggravated factors. Well, concerning that first issue, don't we have to have some not just common elements that have to be established, but some rather definitive elements that have to be established for each of those? And they're different in each of those charges, correct? Correct, Your Honor. In terms of the initial, the charge for aggravated fleeing and eluding, the state has to establish, one, that she knowingly drove a vehicle. Two, that she willfully failed to bring that vehicle to a stop after having been given a visual or audible signal by the officer. And that while doing so caused bodily injury to the officer. That was what was alleged in the indictment and it was with the specificity of those charges that the state has to then prove in their case in chief. And in this situation, it was the act of causing bodily harm that increased this charge from a misdemeanor to a Class IV felony. However, again, the officer was not injured at the point in time that she failed to stop the car. He initiated a siren. He started the lights. And he felt that she did not stop soon enough. She did eventually stop and pull into a parking lot and stop her car. But the state never argued that anyone was injured while she was failing to stop her car, as it was alleged in that charge in the indictment. They offered that he was injured after she had already stopped the car. She gave him the driver's license. And it was not until he attempted to open the door to pull her out of the car that her act of driving away caused an injury to his arm. And so based just on the language of what she was charged with, that the injury occurred while she failed to stop the car, the state did not prove that beyond a reasonable doubt. Doesn't the statute say that if one is supposed to stop, one is supposed to stop and stay stopped until the purpose for the stop has been concluded? Because if it didn't, then if somebody stopped and waited for the police officer to get out of the car and then drove off, and then the cop got back in the car and stopped the person again and they waited until the cop got out of the car and then they pulled away again, that according to that, that wouldn't be a failing to stop or an eluding, would it? Because, quote unquote, the failure to complete the purpose didn't happen. But according to your argument, those two instances would be freebies, so to speak. Your Honor, first, I would say that that situation is different than what we have here. But second, had that been the state's intent, had the state intended to prove that as one continuous act culminating in an injury to the officer, they would have needed to charge her with that. You agree with the state's position that because there was no motion to dismiss, you would have to establish that the defendant was impaired in some fashion in preparing her defense, correct? Correct. We're not making any argument in terms of the indictment being insufficient. On its face, the indictment was sufficient. Where it became arguably insufficient is in what the state is now trying to argue in terms of it being her act of driving away as the fleeing and eluding as opposed to her act of failing to stop. How do you respond to the state's argument based on People v. Cameron, the continuous acts theory, that stopping and then taking off is one event, it's not separate events? Judge, I would have two responses to that. One is that there was an intervening act. She did initially stop, and by all intents and purposes, you can see on the video, she intended to cooperate. She gave him her license. He went back to run her license. Intending to cooperate is fully cooperating. She did not fully cooperate. She refused to get out of the car. She said, I'm not getting out, and after several requests. So how can you argue that she fully cooperated? A police officer is entitled to order not only the driver, but anybody else who might be in the vehicle, out of the vehicle for officer safety reasons. That's clear. Yes, Your Honor. She did not cooperate at that point. But in terms of the stop being an intervening factor, that is something that can be considered in terms of Justice McLaren's point that she wasn't stopping and starting and stopping and starting in kind of a way to try to, you know, continue this sort of inappropriate fleeing of the car. The second issue with the State's argument is that if they are saying this is one continuous act culminating in injury, a single act from the beginning to the end causing injury, then it is that same single act culminating in injury that forms the basis not only for the two aggravated battery charges, but the resisting arrest charge. And so the State runs into an issue with one act, one time, if they're asking that to be a single act. And so reading the indictment of her that she made with regards to the aggravated fleeing and eluding, the State specifically charged that differently. In the other cases, they charged her with driving away. And because of the breadth of the statute with the fleeing and eluding statute, they could have chose to charge her with driving away, but they did not. So in a sense, the State is trying to kind of combine those two things and add in the aggravating factor while still ostensibly trying to avoid a one act, one crime problem that they would have run into had they charged it the way that they're saying now they wish it to operate. Why do you call it an intervening act? Your Honor, I refer to that only because that was the position that the State took in their response. The State's position is that it was one continuous act. And so in response to that, I would say that it's an intervening act. Our position was that it's simply a separate act that they never charged. The reason why I ask the question is because you remember the example or the model, the hypothetical I gave you? Yes, Your Honor. Well, let's assume that you stopped and started five times. Does that then mean she should be charged with five separate counts of fleeing and eluding because each departure is another intervening act? Your Honor, I... See my point, which is your argument means that your client could be charged as many times as there's an intervening act. In this particular case, they didn't charge her with fleeing after she had stopped. That's the difference. Had they chosen to charge her, we would be addressing a different issue. You would be arguing the point that the State was making that it's one continuous act. But be that as it may, why don't we go on to the next issue about one act, one crime? Well, I have one little thing I'd like to say. Okay. And that was, I was going to add that. You know, this may, this argument you're making today might work for your client, but you're making an argument, you're making a more universal. If we make a decision in that regard, we are making a significant universal decision that means now we have separate acts that can be sentenced separately, served consecutively. It may help your client, but it's really not going to be helpful for the rest of the clients who may come before this Court. And, Your Honor, if I could kind of clarify that. In terms of this particular case, all we're asking is that the State did not prove the aggravating factor. On the plain language, the plain language that they set forth in their indictments specific to this case, they said, while failing to stop. End of story. No one was injured while failing to stop. And so that's the difference between sort of the universality that you mentioned there and this particular case. And we're only asking you to decide this particular case, the language the State chose to use in the indictment, which is the failing to stop. She was already stopped when the injury happened. That injury could not have occurred but for her stopping the car, and the State did not charge her with that. And the officer, via the evidence as well as the tape here, the video, doesn't say something like stop, don't go, stop. He doesn't say anything when she starts to drive away. He does not. There's no word that he uses, stop, when she drives away. Is there any evidence of a hand gesture? Because according to the statute, it can be a hand gesture. Your Honor, I reviewed the video and I did not see a hand gesture that was made in terms of her driving away. She did say to the officers she was sorry she had to leave and then pulled away. I did not – that was not my observation of the video. Judge, does the charging instrument say it was during the first or the second event, as you suggest, that there's two events? Does it say? Judge, it is very clear it said while failing to stop. And it did occur while she was failing to stop because he ordered her out of the car and it said she takes off and he's injured. It occurred – I mean, even according to your argument, it would seem – and again, there was no motion to dismiss the indictment. It doesn't seem that she was impeded in any way in presenting her defense. Judge, the issue is the difference between failing to stop and stopping and then leaving. And that differentiation is made between the counts of the state charge and it's made in the way that the state argued the case. The state specifically charged her in the aggravating and in the resisting as driving away. Here they charged her as failing to stop. And the defense made it very clear in their closing that that was what they believed was being charged. They said the state never approved the aggravating factor.  The statute talks about leaving the scene prior to the purpose for the stop having been completed. And so you are making, in essence, an entomy where you are presuming that the purpose for the stop has already been effectuated and therefore her departure was not part or parcel of the original stop. And the other thing – you don't have to answer that. That's just my comment. But the other thing is, are you arguing that the injury that is supposed to make this a felony can only happen while hot pursuit or people are moving either on their feet or in their car or in the air or moving? Because as I understand your argument, one reason why this isn't alluding is because she was stopped at the time. Well, if it is going to be interpreted as a crime and your argument is supposed to be logical, then it would seem to me that you're talking about the only time the crime can be committed is when she's driving on the street or in the parking lot still moving. Are you arguing that, that there has to be motion involved with the injury in order to have a failure to stop? No, Your Honor, we're not arguing that. And the reason we're not arguing that is because if that was what the State intended to charge her with, they certainly could have because the statute allows for any number of different acts to potentially constitute fleeing and eluding. When you say charge her with, are you talking about the crime and the reference to section number, et cetera? Or are you talking about the facts set forth in the indictment or the complaint? The combination of the two. And so in terms of the actual section, the 625 ILCS section that pertains to aggravated fleeing and attempting to elude, that is a broad description of a number of different things that could potentially constitute fleeing and eluding. And it would not just limit it to what you suggest, Your Honor, it has to be in motion. However, the State is required to allege with specificity what it was from those broad charges that they're accusing her of doing. And so that's the period of time where in this particular case, they do have to show that the injury occurred while she was failing to stop because that's what they alleged, that's what they carved out of this statute that would have allowed them to charge this differently, but they did not. Your time is up. You'll have an opportunity to make rebuttal. Thank you, Your Honor. Ms. Harrington, you may proceed. Thank you. Good morning, Your Honors. Counsel, may it please the Court. My name is Lynn Harrington and I represent the people of the State of Illinois. Your Honors, I'd first like to touch on the issue that defendant repeatedly says that they are not arguing with regard to the sufficiency of the indictment. However, in their opening brief and continually today, they do state that the State incorrectly charged this crime. And, for example, I'd like to point out to page 9 of the opening brief, defendant says, the State's position was that it was all part of the same continuation of events. However, that was not alleged in the indictment, nor was this defendant's understanding of the charge. And then again, on page 11, defendant says, if the State intended the underlying act of fleeing and eluding to be something other than what was specified, then the indictment did not clearly inform defendant of the nature of the accusations against her. For this reason, Your Honor, the State feels that it's very important to address this issue that, as the Court has previously noted, defendant did not move pretrial to dismiss the indictment. So then we know the test of the sufficiency of the indictment at this point, Your Honors, is whether it apprised the defendant of the offense charged with sufficient specificity to prepare her defense and whether a conviction on this count, count 4, would bar any future prosecution. Your Honor, all these elements have been met. If I may, I'd like to set out count 4 for you. After stating the date of the offense, the name of the defendant. Before you get there, Ms. Harrington, when reviewing the video, is our review de novo? Because it is like documentary evidence, and there is authority in Illinois, people v. Dixon, people v. Small out of the First District say that we can review the video de novo because we're in no different position than that of the trial court. It's just like documentary evidence. And if you look at the video, other than saying, ouch, or not ouch, there is no ouch. No one asks, are you okay? There's nothing. The other officers don't say, are you okay? Are you hurt? He just says, my arm is damaged a little bit, but he's using his arm comfortably. That's the only indication that he's injured is his own self-serving statement that his arm is damaged a little bit. If we review that de novo, how can we find injury? Your Honor, the standard of review here is not de novo. It needs to be the Collins standard that whether after reviewing the evidence in the light most favorable to the prosecution, any rational trial fact could have found the essential elements of the crime beyond a reasonable doubt. And as you noted earlier, Your Honors, after, at the end of the trial, when the trial court was finding the defendant guilty of all these offenses, it specifically noted Officer Avila's behavior in shaking his arm out. That was perhaps a credibility determination. In addition, on the video there's comments from the two other officers that this defendant was engaged in alluding from the beginning. One officer specifically says, she's got something in that car. She was moving something around in there in the front. For that reason, Your Honors, we believe that this is not a de novo standard of review. Okay, thank you. Thank you. If I may go back to count four, after stating name, date of the offense, and the statutory citation, the indictment says that the defendant knowingly drove a vehicle and willfully failed to bring the vehicle to a stop after having been given a visual or audio signal, excuse me, audible signal by a peace officer and while doing so caused bodily injury to Officer Avila. In her brief, defendant first says, well, I specifically did not cause harm to Officer Avila at the very initial part of my fleeing and alluding. So, therefore, we know, Your Honor, that she was put on notice of what the state was arguing here. The state argued below, as it has argued on appeal, that this was a continuous course of conduct. This defendant did everything she possibly could to allude Officer Avila and try to get away, which she successfully did, without getting pulled out of that car and the officer seeing what was inside of that car. Therefore, she was apprised of the offense. It was a specific, sufficient specificity to prepare her defense and finally, this conviction on count four absolutely served as a bar to future prosecution because as the people have cited in their brief, testimony at a previous trial would serve at a future trial to bar this case on, that count on double jeopardy grounds. Ms. Harrington, Justice McLaren asked some questions about, well, okay, so she stopped, but was the purpose of the stop over and did she need to stay there? I mean, is this intrinsic in that language or do we have cases that establish that? How are we getting to that point? Thank you, Justice Hutchinson. I think Justice McLaren made a very good point, first of all, that it is common sense. Otherwise, she could just continue to flee in the lead and stop and go and stop and go. That here, this was a continuing course of conduct. The purpose of the stop hadn't even begun other than the fact that she finally handed over her driver's license. She never lowered the window all the way down. When she initially lowered it, it was only down a quarter. Officer Avila had to ask her five more times, roll down your window, and she never did it all the way. And at trial, Officer Avila specifically testified the reason that officers need that window down. First of all, it was midnight. It was dark outside. He had a flashlight. When he's shining that flashlight into her car, it's just reflecting his face back at him. So he can't see the defendant. He can't see anything that's going on in that car. And we darn well know from the facts of those two officers watching what was going on that she was moving things around in that car. She did not want the officers to see that. I'd like to start to turn now to the one act, one crime allegation, Your Honor, and the state would argue that there is no one act, one crime violation whatsoever. It's well-settled law that a person can be guilty of two offenses when a common act is part of both of those offenses. That doesn't appear. We've got one continuing course of conduct, and the fleeing and eluding, specifically the eluding from the beginning to end, and the end result is that Officer Avila was injured. We know that from the video because you can see the poor man shaking his arm that he could have been dragged along. Thank God his arm wasn't sucked out. But with the fleeing and eluding, it adds the additional element into it that she not only drove a vehicle and willfully failed to bring it to a stop before she was injured. So that's separate than the other two counts of aggravated battery based on bodily injury and based on insulting or provoking nature, Your Honors. So the defendant never cites any authority for the proposition that this should be considered separate intervals here instead of it's under five minutes that this occurred from beginning to end. And as Justice Hutchinson brought up a very good point, this would set horrible precedents because then you could have all your little separate acts and say, well, these are distinct separate events, so we're going to hit you on them consecutively. That's not the purpose here, Your Honors. The purpose here is to show what happened from beginning to end. Your interpretation of the word stop in the statute encompasses all of the requirements of a stop, including a police officer's directive to get out of the vehicle. Where's your insurance card? She produced her driver's license but not her insurance card, correct? That's correct, Your Honors. Is your position that if we would interpret it the way the defendant wants to interpret it, it would mean that if somebody leaves before the stop is completed, it can never be fleeing and eluding because you've already stopped once? Exactly. It would be a free-for-all. It would make a joke out of the aggravated fleeing and eluding. And it would completely strip the police officers of any authority whatsoever after they had initially stopped somebody. They could hand them their insurance card and take off. They could hand them their license and take off, which is exactly what happened here. And turning to the issue of whether the defendant was proven guilty of aggravated fleeing and eluding beyond a reasonable doubt, Your Honors, that absolutely is the case. Again, we have the standard of viewing the evidence in the light most favorable to the prosecution that people proved count for beyond a reasonable doubt. We have the videotape that doesn't lie, plus we have Officer Avila's testimony of exactly what happened, which corroborated, well, the videotape corroborated Officer Avila's testimony. And for that reason, we prove that the defendant was a driver of a motor vehicle who fled or attempted to elude after being given a visual or audible signal by a police officer. We know initially Officer Avila turned on his oscillating lights. She completely ignored him for 12 seconds. Then he turned on the audible signals. She completely ignored him for another 11 seconds. And as Your Honors have viewed this video, we know this wasn't a crowded roadway or a highway. This literally was the defendant and Officer Avila, and she was completely ignoring the lights and the sirens. And then when she finally, finally stopped after 23 seconds, there literally was 2 minutes and 11 seconds before she continued to elude the police officers. So, and also, Officer Avila was in uniform. He, again, displayed red or blue flashing lights, and he was in an official police vehicle. Your Honors, the State has proven the aggravated fleeing and eluding beyond a reasonable doubt. And for that reason, the people respectfully request that Counts 1, 2, and 4 be affirmed. Are there any more questions? Apparently not. Thank you. Thank you. Ms. Danek, you may proceed with the vote. Thank you, Your Honors.  First, the State continues to argue about the indictment. There is nothing in the indictment that would have formed a basis for a motion to dismiss. It is not the appellant who has an issue with the indictment. It was the State who has a problem with the indictment because the way that they chose to indict her did put her on notice. And the notice it put her on is exactly what the defense argued, that they did not prove the aggravating factor while she failed to stop. The State charged it one way. This is a single case in front of you. We're not asking you to change for hypothetical cases that might come in the future. The State charged her with failing to stop, and it's the State after the fact. There's a case, Russell v. United States, that it's a problem that the State's just sort of allowed to roam free at large and to shift the theory of criminality during the point of the case. Had they meant to charge her the way they charged her with the other ones, they used that language in the other indictments. Give me one moment. For example, for count three, in the defendant trapped the arm and or body of Officer Avila inside a car window while attempting to drive away. They used that language in these other indictments. They used different language in the fleeing and alluding, and defense counsel acknowledged that. He said this is the defense that they prepared against. They prepared the defense against exactly what the State charged, not against attempting to drive away, but in failing to stop the vehicle. What is a stop? A police stop. I mean, we asked that question of the State. A stop ordinarily encompasses bringing your vehicle to a complete stop and then complying with the officer's request and then the officer saying you can go on. That's usually what a stop is, right? Your Honor, I don't disagree with that. The problem we run into in this case, then, is that the word stop does not necessarily have those connotations. In the pure language of the statute, it says stop. The car was stopped. And so, again, if you're interpreting that statute, then, in a way that says, you know, the purpose and the functionality of a stop is to stop and remain stopped, which, again, in certain circumstances, I'm not disagreeing with you. But in this case, then you end up with a vagueness in the statute that has to be construed against the State. And so that opens kind of a whole other can of worms when you sort of divert from the plain language of the statute and the language of the indictment, which just says stop. How do you respond to the State's argument that you still haven't shown that the defendant's ability to defend herself was impaired or impeded by the way she was charged? Your Honor, that is not our argument. We're not arguing that she was impaired or impeded. She defended herself against exactly what was charged. It's the State that's trying to say after the fact that there's some issue with the indictment because they didn't charge what they think they wanted to charge. They charged the indictment. The defendant had every notice of what they charged. And it's now after the fact that the State has the issue with the indictment, not the defendant. All right. If that indictment had included the language in the appropriate place and failed to remain stopped, wouldn't you be standing here arguing that that's not part of the statutory scheme? No, Your Honor, because the statute does allow for a variety of ways, and I believe they leave it open-ended, to define fleeing and eluding. And so they could define fleeing and eluding in a number of different ways. Had the State charged it that way, that's when they would have run into the one act, one crime issue because they're charging all of these things in a different theory for one act, where she then drove away from the stop, failed to stop one continuous act, injuring his arm. And so the argument in that situation would not be necessarily that it didn't fall under that statute because the statute is rather broad, but they would have to allege that, and then there would be another argument that the defense would make in response to that allegation. As I understand your argument, correct me if I'm wrong, or at least try and rationalize a response to it. Based upon what you've said, it sounds to me like the State could have charged the defendant with failing to report and to leave the scene of a personal injury accident, and she could have been charged with a felony for failing to report it after 30 minutes. And I say that because you indicate that this is an intervening act, which means that it wouldn't be part and parcel of the original charge. And since the officer was injured and she left the scene of the accident and she didn't report it or stay at the scene, she could be prosecuted for that as well. Am I correct in that she was guilty of those things, but the State wasn't smart enough to adopt her philosophy? No, Your Honor. I mean, that question is just not before the court at this time in terms of that. The State has the ability to charge a defendant in any way that they may see fit. And in this particular case, this is what they saw fit to charge her with. This is what they felt that the way in which they were going to bring their case against her. And so in terms of a hypothetical other situation, you know, again, we would be looking at the specific facts, and that's just not something that I can answer. I'm not sure it's a hypothetical situation. What it may be is a hypothetical prosecution. But the facts that I related to you would seem to indicate to me that based upon probable cause of the facts that are contained in this record, your client could be additionally charged with leaving the scene of a personal injury accident and failing to report it and thus guilty of a felony. Your Honor, I would need to review that statute before I could give an answer. Pardon? I would need to review that statute before I could formulate any kind of answer. Okay. Very good. Thank you, Your Honors. Any other questions? No. Justice Burkett. Thank you. We will take the case under advisement and hopefully render our decision in half time. Court's in recess. We have another case on the call. Thank you.